FILED
SEPTEMBER 1, 2015
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BEYONCE NIEVES, | ) | No. 32510-5-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| a foreign corporation, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — Beyonce Nieves filed suit against Wal-Mart Stores. She claimed that Wal-Mart was liable under a theory of respondeat superior for torts committed by its security employee who restrained her in the course of his shoplifting investigation. The jury returned a defense verdict. On appeal, Ms. Nieves contends that the trial court erred (1) in giving a jury instruction based on the shopkeeper's privilege statute, RCW 4.24.220, and (2) by failing to grant her motion for judgment as a matter of law on her claim of assault. We disagree with her contentions and affirm.

FACTS

On the evening of December 9, 2011, Beyonce Nieves entered the Wal-Mart store on Wellesley Avenue in Spokane. She was wearing a hooded jacket and sweatpants. The hood of her sweatshirt was raised and covered her head. She was also wearing a small backpack that served as her purse. The store's video surveillance system began recording her movements once she entered the store. One of the store's asset protection associates, Jeremiah Blackwell, observed Ms. Nieves when she walked past him with her hood up and her head down. Mr. Blackwell decided to follow her and observe her activities because he thought she was attempting to conceal her face in a suspicious manner. At trial, Ms. Nieves testified that she was looking down when she entered the store because she was tying the string on her sweatpants.

Ms. Nieves first went to the section of the store where women's stockings were displayed for sale. She checked to see if she could find her size and color of stockings. When she could not find her size or color, she took two boxes to a store associate and asked if the associate could find that color or size size for her. Ms. Nieves testified the store associate told her all the stockings would be out on the shelves. Ms. Nieves stated she left the two boxes of stockings with the store associate who said she would put them back on the shelves. Ms. Nieves walked back to the shelves where she had found the

2

stockings to double check that her size and color of stockings were not there. Ms. Nieves testified that after checking the stocking display a second time and not finding anything, she browsed through a couple other areas of the store. Ms. Nieves walked to the section where Christmas trees were displayed. She took a picture of a tree and sent it to her sister along with several other texts. She then decided to leave and continued texting as she was walking out of the store. She testified that she did not have any merchandise concealed on her person as she was walking out of Wal-Mart.

Mr. Blackwell's testimony at trial contradicted Ms. Nieves's as to what happened while she was in the store. From his own observations, he testified that she threw a box of stockings into a shopping cart that was in the aisle with her. She approached the fitting room associate and talked with the associate about two boxes of stockings that she was holding in her hands. Rather than leaving the two boxes of stockings with the store employee, Ms. Nieves carried them back to the stocking aisle and concealed them underneath her jacket. She discarded the two empty boxes into the same shopping cart she had placed the other box of stockings previously. He believed she concealed stockings from the first box as well, but he only saw her conceal stockings from the second and third boxes. He also believed she concealed the stockings inside her bra or

undergarment. He followed Ms. Nieves the entire time she was in the store. He testified she never discarded the stockings.

Ms. Nieves testified that after she passed through the front doors, and while she was still texting, she felt somebody grab and pull on her backpack. She had not heard anyone speaking to her prior to feeling someone pull on her backpack. While the person was pulling on her backpack, she was pulling the other direction and asking who was doing so and why. She testified that the person began holding onto the handle of the backpack as well as her jacket and was twisting them to prevent losing hold of her, and in the process of holding and twisting these items, she was being choked. She started trying to get out of the backpack and was able to slip out of the straps. She turned around to see Mr. Blackwell standing there. Mr. Blackwell told her to return store merchandise. Ms. Nieves said she did not have any to return. She testified that she then unzipped and opened her coat, lifted up her shirt, and also dropped her pants to prove she did not have anything concealed.

Mr. Blackwell's testimony again differed from Ms. Nieves's as to the events outside the store's front doors. He testified that he called to Ms. Nieves to get her attention after she passed through the front doors. After not getting a response, he reached out saying he was with security, and then grabbed the loop on the top of her

4

backpack with his left index finger. Ms. Nieves turned around to face him and told him to let go of her. He asked her to come back inside the store with him so he could recover the merchandise, but she refused and continued to pull away toward the parking lot. He testified that he continued holding onto her backpack while waiting for her to comply with his request to return to the store. He denied ever choking Ms. Nieves or dragging her backwards. She wiggled out of the backpack and faced him, still holding onto the strap while he was holding onto the handle. She released the strap and started to remove her clothes to show him that she did not have anything concealed. Although he never saw any items concealed on her person when she removed her clothing, he testified he believed she still had items concealed in her clothes in parts that she did not reveal.

Ms. Nieves asked Mr. Blackwell to return her backpack, which he was still holding. He replied that he would not and that Ms. Nieves needed to come back into the store so they could talk. Ms. Nieves said she would not go back into the store because she had not done anything wrong. Ms. Nieves told Mr. Blackwell she was going to call the police to report that he had assaulted her. She started to walk away, and Mr. Blackwell offered to return her bag. But she left her bag with Mr. Blackwell, saying she was going to get her mother, and she would return. She and her mother both called the police several times about the incident.

After Ms. Nieves left the store, Mr. Blackwell wrote a report on the incident and pulled video footage of what happened. He also went back and retrieved three empty stocking packages from the shopping cart. He took a picture of the boxes and attached it to his report.

After returning to the store, Ms. Nieves talked to a member of management and asked to file an incident report, which she did. While at the store the second time, she discovered she had "'bruising and slight scratch marks'" on her neck. Report of Proceedings (RP) at 92.

Officer Nathan Donaldson of the Spokane Police Department arrived at the Wal-Mart and talked to Ms. Nieves, who told him she had been assaulted by a Wal-Mart employee. Officer Donaldson took Ms. Nieves's statement. He went inside the store to investigate the incident. Officer Donaldson took Mr. Blackwell's statement in the store's security office. Mr. Blackwell also gave Officer Donaldson the report he had written about the incident and let him review the video he had compiled.

Officer Donaldson determined from his on-scene investigation that probable cause did not exist to arrest Mr. Blackwell for assault. He based his determination on the surveillance video Mr. Blackwell had compiled, which he said was in conflict with what Ms. Nieves had told him. Officer Donaldson did find probable cause to cite Ms. Nieves

for theft based on statements from Mr. Blackwell and the physical evidence of the empty women's stocking containers. The State, however, dismissed the charge very early in the criminal proceedings.

On January 27, 2012, Ms. Nieves contacted the police to file another report about the incident on December 9, 2011, claiming again that she was assaulted by Mr. Blackwell. Officer Donaldson responded. Officer Donaldson testified that Ms. Nieves gave a similar statement about the incident with Mr. Blackwell, but added that Mr. Blackwell had choked her for approximately 10 minutes during their struggle, and that he had also dragged her backwards with enough force that it required her to take about four steps to keep from being pulled off her feet. In contrast, Ms. Nieves testified she told Officer Donaldson that it *seemed like* Mr. Blackwell was choking her for 10 minutes. Ms. Nieves also told Officer Donaldson that she sustained some bruising on the right side of her neck from the incident.

Officer Donaldson took additional statements from Mr. Blackwell and reviewed the video again. Officer Donaldson attempted to corroborate Ms. Nieves's new statement with the video footage but found they were inconsistent. He believed based on the video that Ms. Nieves's neck injury was possibly caused by the backpack straps rubbing against

her neck, from her own action. The officer again did not find probable cause to recommend any charges against Mr. Blackwell.

Ms. Nieves filed a complaint for damages against Wal-Mart under the doctrine of respondeat superior related to the actions of its employee, Mr. Blackwell, in detaining her on December 9, 2011. Ms. Nieves asserted (1) assault and battery, (2) unlawful imprisonment, and (3) outrage.

During the jury instruction conference, Wal-Mart proposed that the jury be instructed on the shopkeeper's privilege statute, RCW 4.24.220. Both sides presented arguments. Ms. Nieves objected to the instruction arguing that it was not supported by the evidence because Mr. Blackwell's actions constituted an assault as a matter of law, which is not privileged under the statute. Additionally, she argued that the "reasonable means" requirement under the statute meant that one could not claim the protection of the statute if one committed an assault (by way of an offensive touching) to accomplish the detention. The trial court ultimately decided to give the contested instruction, stating that the statute's reasonableness requirements set up factual questions for the jury, and that there were "plenty of facts" presented by each side from which the jury could decide "whether this was an assault or a reasonable act in terms of stopping somebody." RP at 215. Additionally, the court determined that RCW 4.24.220 was "clearly an applicable

8

statute designed for precisely these types of cases where somebody is detained." RP at

215. The contested instruction stated:

> In any civil action brought by reason of any person having been detained on or in the immediate vicinity of the premises of a mercantile establishment for the purpose of investigation or questioning as to the ownership of any merchandise, it shall be a defense of such action that the person was detained in a reasonable manner and for not more than a reasonable time to permit such investigation or questioning by a peace officer or by the owner of the mercantile establishment, his or her authorized employee or agent, and that such peace officer, owner, employee, or agent had reasonable grounds to believe that the person so detained was committing or attempting to commit larceny or shoplifting on such premises of such merchandise. As used in this section, "reasonable grounds" shall include, but not be limited to, knowledge that a person has concealed possession of unpurchased merchandise of a mercantile establishment, and a "reasonable time" shall mean the time necessary to permit the person detained to make a statement or to refuse to make a statement, and the time necessary to examine employees and records of the mercantile establishment relative to the ownership of the merchandise.
>
> It is the defendant's burden to prove this defense by a preponderance of the evidence.

Clerk's Papers (CP) at 41.

The jury returned a defense verdict. The jury answered "no" to the first three

questions on the special verdict form, finding that the defendant did not commit

(1) assault, (2) outrage, or (3) false imprisonment. Because they answered "no" to the

first three questions, the jury did not answer question 4 on the special verdict form, which

summarized the defense contained in the shopkeeper's privilege statute.

9

After the jury reached its verdict and the trial court dismissed the jury, Ms. Nieves brought an oral motion for "judgment notwithstanding the verdict." RP at 234. The court did not rule on the oral motion, but instead suggested that Ms. Nieves file a written motion. On April 24, 2014, Ms. Nieves filed a written motion for judgment as a matter of law pursuant to CR 50 on her assault claim. Ms. Nieves contended that Mr. Blackwell had committed an assault as a matter of law when he grabbed her from behind. The trial court denied Ms. Nieves's motion for judgment as a matter of law and entered judgment in favor of the defendant.

Ms. Nieves appeals.

## ANALYSIS

Ms. Nieves contends that the trial court erred (1) in giving the shopkeeper's privilege instruction, and (2) in denying her motion for judgment as a matter of law on her claim for assault.

1.      *Whether the trial court erred in giving the shopkeeper's privilege instruction*

Ms. Nieves assigns error to the trial court's giving of the shopkeeper's privilege instruction and asks this court to remand for a new trial. Ms. Nieves contends that as a matter of law, the shopkeeper's privilege can never be given when facts establish an assault because an assault is never a reasonable manner of detaining a suspected

shoplifter. She also contends that giving the shopkeeper's privilege instruction prejudiced her by allowing the jury to conclude, contrary to law, that while Mr. Blackwell's conduct amounted to an assault, it was nevertheless reasonable under the circumstances and privileged under the statute.

The standard of review of this alleged error depends on whether the trial court's decision to give the instruction was based upon a matter of law or a matter of fact. If based upon a matter of law, our review is de novo; if based upon a factual dispute, our review is abuse of discretion. *See State v. Walker*, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998).

The civil shopkeeper's privilege statute permits store personnel to detain a suspected shoplifter (1) in a reasonable manner (2) for a reasonable time (3) if they have reasonable grounds to believe the person is committing or attempting to commit larceny or shoplifting. *State v. Johnston*, 85 Wn. App. 549, 554, 933 P.2d 448 (1997); RCW 4.24.220. Ms. Nieves takes issue only with the first prong. She argues that the protection of the statute does not apply here because Wal-Mart's employee committed an assault against her, and an assault is never a "reasonable manner."

Ms. Nieves's argument presupposes that an assault was committed against her. As mentioned above, the jury by special verdict found that no assault had occurred.

Instruction 8 defined assault as "a harmful or offensive contact." CP at 37. Ms. Nieves

does not assign error to this instruction, so it becomes the law of the case. *State v.*

*France*, 180 Wn.2d 809, 814, 329 P.3d 864 (2014). A reviewing court will not disturb

the verdict if there is substantial evidence to support it. *Burnside v. Simpson Paper Co.*,

123 Wn.2d 93, 107-08, 864 P.2d 937 (1994). Substantial evidence is "'sufficient

evidence to persuade a rational, fair-minded person of the truth of the premise.'"

*Parrott-Horjes v. Rice*, 168 Wn. App. 438, 445, 276 P.3d 376 (2012) (quoting *Westmark*

*Dev. Corp. v. City of Burien*, 140 Wn. App. 540, 557, 166 P.3d 813 (2007)). "In

reviewing the evidence, the appellate court does not reweigh the evidence, draw its own

inferences, or substitute its judgment for the jury." *Westmark Dev.*, 140 Wn. App. at 557.

Here, the evidence allowed the jury to find that an assault did not occur. Wal-Mart

presented evidence that once Ms. Nieves exited the doors, Mr. Blackwell attempted to get

her attention. When this attempt failed, Mr. Blackwell identified himself as security and

grabbed the loop on her backpack to prevent her from continuing. A jury could

reasonably find that this "contact" was neither harmful nor offensive. A jury could also

find that Ms. Nieves's continuing struggle to free herself rather than complying with

security was an unreasonable response which acted as a superseding cause to any injury

12

sustained by her. Because disputed facts allowed the jury to find that no assault occurred, we review the giving of the instruction under an abuse of discretion standard.

In deciding to instruct the jury on the shopkeeper's privilege statute, the trial court determined that the statute's reasonableness requirements set up factual questions for the jury and, that in this case, there were "plenty of facts" presented by each side from which the jury could decide "whether this was an assault or a reasonable act in terms of stopping somebody." RP at 215. Additionally, the court found RCW 4.24.220 to be "clearly an applicable statute designed for precisely these types of cases where somebody is detained." RP at 215.

We agree with the trial court that this factual pattern was the type envisioned by the legislature when it enacted this statute. We hold that the trial court did not abuse its discretion by giving the shopkeeper's privilege instruction in this case.

2.      *Whether the trial court erred in denying Ms. Nieves's motion for judgment as a matter of law*

Ms. Nieves assigns error to the trial court's denial of her motion for judgment as a matter of law on her assault claim. She argues that she was entitled to this remedy when the testimony at trial established as a matter of law that an assault was committed. Again, Ms. Nieves presupposes that Wal-Mart's employee committed an assault against her, and as explained above, substantial evidence supports the jury's finding that no assault

13

No. 32510-5-III
*Nieves v. Wal-Mart Stores, Inc.*

occurred. We conclude that the trial court did not err in denying her motion for judgment as a matter of law.

Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Brown, A.C.J.                    Fearing, J.