IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32869-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | OPINION PUBLISHED |
| v. | ) | IN PART |
| | ) | |
| JOHN MARK CROWDER, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — John Crowder raped a 14-year-old girl at gunpoint after supplying her two friends with a substance purported to be marijuana. He was convicted after a jury trial. The State's evidence at trial, while strong, lacked an essential component: proof the substance distributed by Mr. Crowder was in fact marijuana. Based on this error, we reverse Mr. Crowder's two convictions for distribution of controlled substances. Mr. Crowder's rape conviction is affirmed in full.

FACTS[1]

Two juvenile males, S.I. and Z.H., met Mr. Crowder while out walking on a July night. Mr. Crowder initially invited the two males to join him in setting off some

---

[1] Because Mr. Crowder's challenge goes to the sufficiency of the evidence, we construe the facts in the light most favorable to the State. *State v. Salinas*, 119 Wn.2d 192, 201, 892 P.2d 1068 (1992).

fireworks. They then attended a nearby bonfire. While at the bonfire, Mr. Crowder asked S.I. and Z.H. if they wanted to smoke some marijuana. Both said yes.

Mr. Crowder took S.I. and Z.H. to his house to obtain marijuana. All three went inside the garage. Once inside, Mr. Crowder retrieved a substance believed to be marijuana from prescription bottles located in a wooden cabinet. Mr. Crowder and the two young men then smoked the apparent marijuana. When they finished, all three got into Mr. Crowder's Jeep and headed back to the bonfire.

After returning to the bonfire, Mr. Crowder and the two boys drank vodka shots. Z.H. then suggested inviting 14-year-old I.D. to join the group. After exchanging text messages, I.D. agreed to come out. She snuck out of her house through a window and Mr. Crowder picked her up in his Jeep. I.D. had never met Mr. Crowder before.

Back at the bonfire, S.I. fell asleep and Z.H. passed out. I.D. was starting to get tired when Mr. Crowder came up behind her, pulled her head back, and tried to pour vodka down her throat. Angered, I.D. got up and started to head home. As she walked by the Jeep, Mr. Crowder grabbed I.D. and turned her around. I.D. told Mr. Crowder to let her go. He did not. Mr. Crowder removed a gun from his pocket and ordered I.D. to undress and get into the back of his Jeep. He held the gun up against I.D.'s head and pulled back the trigger. At this point, I.D. complied with Mr. Crowder's demands.

Once inside the Jeep, Mr. Crowder raped I.D. The assault lasted approximately an hour. Eventually I.D. was able to get up, clothe herself, and run home. She snuck back in through the window and disclosed the rape several days later. At this point, the police began an investigation.

Five days after the assault, law enforcement executed a search warrant at Mr. Crowder's house. During the search, police found several firearms, including a revolver. Police also recovered prescription bottles containing a leafy substance from Mr. Crowder's garage. One of the bottles was tested for its tetrahydrocannabinol (THC) content and determined to contain marijuana. An officer showed the revolver seized from Mr. Crowder's house to I.D. She identified it as the same gun used by Mr. Crowder. The gun was never test fired.

Mr. Crowder was charged with rape in the first degree with a firearm enhancement and a special allegation that the victim was under the age of 15, or in the alternative, rape of a child in the third degree, as well as with two counts of distribution of a controlled substance to a person under the age of 18. The matter proceeded to trial. During voir dire, a prospective juror indicated he had been a child sex abuse victim. Defense counsel moved to strike the juror for cause. The State indicated it had no objection, but asked to

3

approach the bench. A bench conference occurred off the record. When the conference

ended the court excused the juror.

The jury convicted Mr. Crowder of the offenses against him as charged. He

received a sentence of 360 months to life. Mr. Crowder appeals.

## ANALYSIS

Mr. Crowder's appeal proposes three bases for reversal: First, he claims the trial

court's off-the-record discussion during voir dire violated his public trial right. Second,

he argues the State presented insufficient evidence the substance distributed to S.I. and

Z.H. met the legal definition of marijuana. Finally, he contends insufficient evidence

supports the State's claim that he used an actual firearm while raping I.D. Mr. Crowder's

second claim is persuasive. We reject the other two.

*Public trial right*

The right to a public trial is guaranteed by article I, sections 10 and 22 of the state

constitution. *State v. Love*, 183 Wn.2d 598, 604-05, 354 P.3d 841 (2015), *cert. denied*,

136 S. Ct. 1524 (2016). When reviewing a public trial claim, we follow a three-step

analysis, asking: (1) whether the public trial right attaches to the proceeding at issue, (2)

if so, whether the courtroom was closed, and (3) whether the closure was justified. *Id.* at

605. "The appellant carries the burden on the first two steps; the proponent of the closure

carries the third." *Id.*

Mr. Crowder claims the trial court violated his right to a public trial when it engaged counsel in an off-the-record discussion during a juror challenge. While we agree with Mr. Crowder that the public trial right attaches to this aspect of jury selection, *see id.* at 605-06, we do not agree there was a closure. No part of the juror challenge took place outside of direct public hearing and view. While in open court, the juror was questioned, Mr. Crowder's counsel made his motion for cause, and the State concurred. At this point, the challenge was complete. There was nothing further to make public. Although the parties engaged the judge in an unrecorded side bar prior to the court entering its formal ruling, this interruption does not change the fact that the substance of juror challenge occurred entirely in open court.

Mr. Crowder's public trial argument would only have traction if he could show something substantive occurred during the off-the-record side bar. Our courts utilize the "experience and logic" test to determine whether a particular court procedure implicates the public trial right. *Id.* at 605. Side bar conferences generally do not meet this test because they historically have been closed to the public and because public access would not positively enhance the proceedings. *State v. Smith*, 181 Wn.2d 508, 511, 334 P.3d 1049 (2014). Mr. Crowder fails to meet his burden of establishing that the side bar in his

No. 32869-4-III
*State v. Crowder*

case falls outside the general rule. The State proffers the side bar discussion simply addressed non-substantive procedural matters regarding the trial court's motions practice. Mr. Crowder does not contest this proffer and nothing in the record suggests it is inaccurate. While it would have been preferable for the court to have ensured the side bar was recorded, *see id.* at 518, we are satisfied the present circumstances do not permit Mr. Crowder's public trial challenge.

*Insufficient evidence of marijuana*

Mr. Crowder argues the State failed to meet its burden of proof for the two counts of distributing a controlled substance to a person under the age of 18. Specifically, he maintains there is no evidence that the substance he provided to S.I. and Z.H. contained a THC content of 0.3 percent as required by statute.[2]

Evidence is sufficient to support a conviction where, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When an appellant challenges the sufficiency of the evidence, he "admits the truth of the State's evidence and all inferences that reasonably

---

[2] At the time of trial, the applicable statute was codified at RCW 69.50.101(t). The same statutory definition applies today, but is now found at subsection (v).

6

can be drawn therefrom." *Id.* Appellate courts defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Circumstantial evidence carries the same weight as direct evidence. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).

The parties do not dispute the elements the State was required to prove at trial. Under RCW 69.50.406(2), the State must prove the defendant was a person over the age of 18 and that he distributed a controlled substance, including marijuana, to a person under 18 who is at least three years his junior. For purposes of this crime, "'[m]arijuana' . . . means all parts of the plant Cannabis, whether growing or not, with a THC concentration greater than 0.3 percent on a dry weight basis . . . ." Former RCW 69.50.101(t) (2014).

While the parties agree the State must prove distribution of a controlled substance and that, in the case of marijuana, the State must prove a THC concentration of greater than 0.3 percent, the dissent does not accept this premise. Under the dissent's construction, the statute governing distribution of a controlled substance to a minor differs materially from the crime of distribution of a controlled substance in that the latter requires proof of the identity of the controlled substance, but the former does not. We

7

find no such distinction. The statute governing distribution to minors (RCW 69.50.406) incorporates the distribution statute (RCW 69.50.401) and simply adds elements regarding the age of the distributor and recipient. *Compare* RCW 69.50.401 *with* RCW 69.50.406. Given the State must prove the presence of a controlled substance in a normal distribution case, the same is necessarily true in a case alleging distribution to a minor.

The requirement that marijuana, to qualify as a controlled substance, must have a THC content of at least 0.3 percent is not something that can be dismissed as an unimportant definition. Again, the parties do not dispute this point. Nor should they. The difference between a definitional statutory requirement and an element is generally pertinent to issues such as the adequacy of an information or the court's "to convict" instructions. *See State v. Porter*, 186 Wn.2d 85, 375 P.3d 664 (2016) (allegation of charging error regarding definition of possession); *State v. Johnson*, 180 Wn.2d 295, 325 P.3d 135 (2014) (allegation of charging error regarding definition of "restrain"); *State v. Allen*, 176 Wn.2d 611, 294 P.3d 679 (2013) (allegation of charging error and omission of "true threat" definition from jury's "to convict" instruction); *State v. Lorenz*, 152 Wn.2d 22, 93 P.3d 133 (2004) (allegation of omission of "sexual gratification" definition from jury's "to convict" instruction). But the same is not true when it comes to a sufficiency challenge. The State is obliged to present sufficient evidence to establish that a

8

defendant's conduct falls within the scope of a criminal statute, regardless of whether the statute's requirements are elemental or definitional. *See State v. Stevens*, 158 Wn.2d 304, 309-10, 143 P.3d 817 (2006) (characterization of a statutory requirement as definitional does not relieve State of burden of proof). *See also State v. Rich*, 184 Wn.2d 897, 365 P.3d 746 (2016) (analyzing whether State presented sufficient evidence to meet statutory definition of recklessness); *State v. McKague*, 172 Wn.2d 802, 805, 262 P.3d 1225 (2011) (analyzing whether State presented sufficient evidence to meet statutory definition of "substantial bodily harm"). In sum, no matter which label applies, the State was obliged to present sufficient evidence of 0.3 percent THC in order to sustain Mr. Crowder's conviction.

Although the parties agree about the State's evidentiary burden, there was little discussion at trial about THC. On cross-examination, the State's toxicology expert testified that to classify a substance as marijuana, it must contain more than 0.3 percent THC. The expert also testified on direct examination that she had examined one of the containers seized from Mr. Crowder's home and determined it contained marijuana. Read in total, the expert's testimony was sufficient to establish the substance found inside the container met the legal definition of marijuana. But the testimony did not establish the marijuana tested by the toxicologist had the same THC content as the substance

9

provided to S.I. and Z.H.

As pointed out by the dissent, a toxicologist can sometimes provide random sampling testimony, indicating a tested substance was most likely similar to an untested substance. *See State v. Caldera*, 66 Wn. App. 548, 832 P.2d 139 (1992). However, such testimony must be based on the foundation that the tested and untested materials appeared similar. *Id.* No such foundation was established in this case. Because the State's toxicologist was not in a position to compare the substance tested in the lab to that consumed by S.I. and Z.H., random sampling did not provide the State an avenue of proof.[3]

The testimony of S.I. and Z.H. also failed to establish a link between the tested substance and the substance that was consumed. At the time of the police search, at least four pill bottles[4] were located inside Mr. Crowder's garage. Two bottles were amber-colored and located in the wooden cabinet described by S.I. and Z.H. Two more were

_____

[3] While the foundation for random sampling testimony was not met in this case, such testimony would be unlikely by itself to establish THC content. When the fact to be established is not merely the identity of a drug, but the purity or toxicity level, visual similarity would not appear to be sufficient to permit extrapolation. Instead, further testimony, explaining why similar toxicity can be assumed from similar appearance would need to be presented.

[4] In his testimony, S.I. described seeing "bottles" of marijuana. 2 Verbatim Report of Proceedings (VRP) (Sept. 17, 2014) at 223. The State never clarified the number of bottles observed by S.I.

10

taken from a satchel. These bottles appeared to be clear in color and bore marijuana labels. All four bottles were potential sources of the substance distributed by Mr. Crowder. Yet only one was tested. During trial, neither S.I. nor Z.H. described the color of the bottle utilized by Mr. Crowder. Nor did they specify whether the bottle had a label. The boys were never shown a bottle to confirm whether it appeared similar to the one used by Mr. Crowder. Given the multiple possible sources of the substance distributed by Mr. Crowder, the State's theory that it tested a representative sample is too speculative to meet the substantial evidence requirement.

The testimony from S.I. and Z.H. also did not establish the potency of the substance provided to them by Mr. Crowder. The two juveniles testified they were familiar with marijuana and that the substance provided to them by Mr. Crowder made them "feel high." But because the boys did not test the substance provided to them, their use of the term "marijuana" does not carry the same technical meaning as the term utilized by the toxicologist. Nor were the boys' experiences with marijuana sufficient to establish potency. There was no testimony about the meaning of the 0.3 percent THC cut-off level or whether a substance with less than 0.3 percent THC would be capable of producing the psychological effects recounted by the two young men. There was not

11

even any testimony about whether 0.3 percent is a high, low, or average amount of THC.[5]
Given this lack of context, testimony from the juveniles that they received a good "high"
from the substance provided to them by Mr. Crowder does not help the State satisfy its
burden.

Proof of THC content would not have been difficult, let alone impossible. Apart
from establishing a link between the bottle tested for THC and the one observed by S.I.
and Z.H.,[6] the State could have introduced expert testimony regarding the nature of THC.
Information about the typical THC content of marijuana and the type of potency required
to produce sensations associated with being "high" could have provided the jury
sufficient evidence to conclude that the substance distributed by Mr. Crowder must have
had a THC content of at least 0.3 percent. But this was not done. The State did not give
the jury any information about the significance of a 0.3 percent THC level. Based on this
lack of information, the State failed to meet its burden. Mr. Crowder's marijuana delivery

---

[5] These are not matters amenable to judicial notice. *See State v. Barringer*, 32 Wn.
App. 882, 888, 650 P.2d 1129 (1982) (court erred in taking judicial notice, through jury
instruction, that valium is also known as diazepam when only diazepam was listed in the
statutory schedule of controlled substances), *overruled on other grounds by State v.
Monson*, 113 Wn.2d 833, 849-50, 784 P.2d 485 (1989).

[6] Had the State produced such testimony, the evidence may still have been
insufficient. Given the marijuana had been consumed, the State's best evidence regarding
THC content would appear to have been expert testimony from a toxicologist or law
enforcement officer.

12

convictions must be reversed with prejudice.

*Sufficiency of the firearm enhancement*

Mr. Crowder contends insufficient evidence supports his firearm sentencing

enhancement because the State did not prove the firearm was operable as required by

RCW 9.41.010(9). We disagree for the reasons we recently set forth in *State v. Tasker*,

193 Wn. App. 575, 373 P.3d 310, *review denied*, 186 Wn.2d 1013 (2016).

As explained in *Tasker*, evidence that a device appears to be a real gun and is

wielded during commission of a crime is sufficient circumstantial proof that the device is

an actual firearm, as defined by RCW 9.41.010. *Tasker*, 193 Wn. App. at 594. I.D.'s

testimony provided sufficient circumstantial proof in this case. She testified Mr. Crowder

threatened her with a gun and placed it to her head. She described the gun as having a

"spinning barrel," 2 Verbatim Report of Proceedings (Sept. 17, 2014) at 143, and later

identified the gun as a revolver seized from Mr. Crowder's house. The totality of these

circumstances sufficiently established that Mr. Crowder was armed with a real gun as

required by RCW 9.94A.533(3) and 9.41.010(9).

## CONCLUSION

Mr. Crowder's conviction for first degree rape with a firearm enhancement is

affirmed. His convictions for distribution of controlled substances are reversed with

13

prejudice. This matter is remanded to superior court. In the unpublished portion of this opinion, we reject the arguments set forth by Mr. Crowder in his statement of additional grounds for review.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

STATEMENT OF ADDITIONAL GROUNDS

Mr. Crowder makes several additional arguments for reversal in his statement of additional grounds (SAG). The majority of his complaints pertain to facts outside the current record. They include: allegations that the State manipulated witness testimony, allegations that the State failed to investigate, allegations that defense counsel provided ineffective assistance, and arguments regarding jury selection. We will not address facts outside the record in the context of a direct appeal. Instead, the appropriate avenue for relief is a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

What follows is an examination of the claims of error that can be reviewed from the record. None are meritorious.

*Allegations of prosecutorial misconduct*

Mr. Crowder complains the State engaged in misconduct by: withholding witness interviews, making improper statements during closing argument, offering inflammatory photographs into evidence, excluding information from law enforcement reports, and improperly referring to his "rap sheet." SAG at 4.

The record does not suggest any misconduct or gamesmanship with respect to the witness interviews. The prosecutor facilitated witness interviews without requiring court

15

No. 32869-4-III
*State v. Crowder*

order. Although the interviews did not take place until shortly before trial, this is not a basis for finding misconduct. *State v. Wilson*, 149 Wn.2d 1, 65 P.3d 657 (2003).

None of Mr. Crowder's claims regarding closing argument warrant reversal. The vast majority of Mr. Crowder's complaints did not generate an objection.[7] In this context, appellate review is waived unless Mr. Crowder can establish the prosecutor's misstatements were so "flagrant and ill intentioned" that a curative instruction would not have cured the resultant prejudice. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). This standard has not been met. Only two objections to the prosecutor's closing were preserved by defense objection.[8] In both cases, the defense objected that the prosecutor failed to accurately restate the record. We agree with the trial court that the prosecutor's statements were merely arguments regarding what could be inferred from the record. There was no misconduct.

---

[7] These include: the prosecutor's statement that the victim "swore to tell the truth. And she did." 4 VRP (Sept. 19, 2014) at 547. Requesting jurors not "give in to that smoke screen." *Id.* at 555. The prosecutor's statement, "This is what happened." *Id.* at 557. The statement, "the man that did this to her." *Id.* at 564. The statement, "It's time for justice to be served." *Id.* And the prosecutor's statement "don't get fooled." *Id.* at 595.

[8] These include the prosecutor's statements regarding the juveniles' response to Mr. Crowder's invitation to smoke marijuana and the prosecutor's statement that Mr. Crowder could not be ruled out as the contributor to a trace amount of DNA (deoxyribonucleic acid).

16

Mr. Crowder also contends the prosecutor committed misconduct by offering inflammatory photographs and physical evidence. Again, no objection was made and Mr. Crowder has not shown that a curative instruction would not have offset any alleged prejudice. *Id.*

Mr. Crowder claims the State withheld evidence based upon information allegedly excluded from law enforcement reports. To the degree Mr. Crowder claims error, he cannot show prejudice. The omitted fact that Detective Runge had attempted to contact child witnesses bore little relevance. The issue of whether Mr. Crowder expressed shock or excitement when confronted with the allegations against him were covered in cross-examination. The remainder of the excluded information was adequately remedied by the trial court's order, restricting testimony from the State's witnesses.

Finally, Mr. Crowder complains the State's witness improperly referenced his "rap sheet" in testimony. Defense counsel successfully objected to this testimony, but refused a curative instruction. No further issue was made of this fact. Given this context, there was no prejudicial error.

*Sufficiency of evidence*

Apart from his misconduct allegations, Mr. Crowder claims the State failed to present sufficient evidence to justify his convictions. The published portion of our

No. 32869-4-III
*State v. Crowder*

opinion addresses Mr. Crowder's contentions with respect to the marijuana convictions and firearm enhancement. As to the rape conviction, the victim's testimony was sufficient to justify the jury's verdict. Corroboration was not required. RCW 9A.44.020(1).

_____
Pennell, J.

I CONCUR:

_____
Siddoway, J.

18

32869-4-III

KORSMO, J. (dissenting) — For several reasons, I respectfully dissent from the majority's ruling concerning the sufficiency of the evidence to support the two counts of delivery of marijuana to a child. First, the majority mistakenly adds an element to the delivery statute by incorporating a definition into the elements instruction. It then compounds the error by making the new element impossible to prove by (1) rejecting random sampling of any existing controlled substances, and (2) requiring proof of the quantity of THC[1] given a child in a case where the controlled substance in question has already been consumed. This approach conflicts with numerous cases from this court and the Washington Supreme Court.

The elements of the crime are found in RCW 69.50.406(2), which makes it a class B felony for a person to deliver a controlled substance to a person under 18. Those elements were properly incorporated into jury instructions 20 and 21 that told the jury it had to decide whether Mr. Crowder knowingly delivered a controlled substance to each of the victims.[2] Clerk's Papers at 154, 155. Notably, neither the statute nor the jury instruction

---

[1] Tetrahydrocannabinol.

[2] In many respects, this situation is similar to charging felony murder. While the predicate felony needs to be alleged, the elements of that felony are not themselves elements of the murder charge. E.g., State v. Kosewicz, 174 Wn.2d 683, 692, 278 P.3d 184 (2012).

required the State to prove the identity of the controlled substance.[3] Accordingly, the State never undertook to prove the identity of the controlled substance. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

The majority's error is one that is recurring of late, largely because appellants frequently argue that the definitional components of an element are themselves elements of the charged crime. Some courts have failed to make the distinction, but appellate courts have regularly rejected these arguments. *E.g.*, *State v. Porter*, 186 Wn.2d 85, 375 P.3d 664 (2016) (definition not element of offense); *State v. France*, 180 Wn.2d 809, 818-20, 329 P.3d 864 (2014) (definitions do not create new elements or alternative means of committing offenses); *State v. Lorenz*, 152 Wn.2d 22, 93 P.3d 133 (2004) (definition not an element of charged offense). We should be doing the same.

Due process simply requires evidence from which the jury could find each element of the crime was proven beyond a reasonable doubt. *E.g.*, *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). There was ample evidence that the defendant delivered a *controlled substance* to the two boys. First, they both told jurors that they had been given

---

[3] In most instances, the identity of the controlled substance is proven at trial because the punishment will differ depending on the identity and classification of the substance. That is not a concern for RCW 69.50.406(2), which applies to any controlled substance. RCW 69.50.406(1) treats delivery of narcotic drugs, methamphetamine, and flunitrazepam, as a class A felony.

2

marijuana, a substance with which they had some prior limited experience, and which the instructions informed jurors was a controlled substance. Indeed, they had obtained a "five sack of weed" shortly before encountering Crowder. 2 Verbatim Report of Proceedings (Sept. 17, 2014) (VRP) at 277. The defendant himself told them the names of the varieties of "medical" marijuana he had in his collection, supplied the bong used, and prepared and shared the marijuana with the boys. The jury could reasonably take him at his own word. The boys described the effect of the marijuana on them, with at least one of the boys describing it as being more powerful than his previous experience. 2VRP at 287. The boys knew what they were smoking and the jury was free to credit the evidence that they consumed potent marijuana. Whether this court finds that evidence persuasive is an irrelevancy.

While that was sufficient for proving this charge, there was more evidence. The crime laboratory witness explained that one of the marijuana containers retrieved from the defendant's collection was tested and determined to constitute marijuana. The majority agrees the testimony satisfied its new potency requirement, but then discounts the information because of concerns that the sample utilized for testing was not shown to be similar to the one given the boys by the defendant. This argument was long ago rejected by this court:

> During an undercover operation, Caldera delivered several plastic bags containing a white powdery substance believed to be cocaine to undercover officers. A forensic expert visually inspected the substance in

3

each of the plastic bags and testified that the bags all appeared alike and each contained a similar amount of the white powdery substance. She randomly selected one bag for scientific testing. It tested positive as cocaine. . . . Caldera argues that random sampling is insufficient to identity the entire quantity as an illegal drug. We disagree and hold that the scientific testing of a random portion of a substance that is consistent in appearance and packaging is reliable and supports a finding that the entire quantity is consistent with the test results of the randomly selected portion. Other state and federal courts have held likewise.

*State v. Caldera*, 66 Wn. App. 548, 550, 832 P.2d 139 (1992) (extensive footnote listing supporting authority deleted). The sampling here easily satisfied this standard. The boys testified that the containers were similar to the one that the marijuana they smoked came from, and the forensic witness indicated that the containers were similar. The majority's complaint goes to the weight the jury would have given the testing, not its admissibility, if the argument had even been raised at trial. There being (understandably) no objection to the testimony at trial, this court does not get to discount the evidence. Even under the majority's revised test, the evidence was sufficient.

Finally, the majority creates (and appears to admit that it has) an impossible standard to meet in delivery cases where the substance has been consumed. In a typical case, there is no remaining sample to be tested. Even if the victims had undergone urinalysis testing, it would not have provided any evidence of the drug's potency.

4

No. 32869-4-III
*State v. Crowder*

Indeed, the fact that the boys had smoked marijuana previously[4] would limit the ability of testing to confirm that they had used marijuana during their evening with Crowder.

This is one of the strongest cases of this type one will ever see, with the victims able to testify about what had happened and additional samples of the same drug found at the place the victims told officers the sample they had consumed had originated. The majority is asking for an impossible standard of proof, even if one assumes that there are experts who can link the THC level of a drug to particular effects on the user, a fact not demonstrated in this record.

The delivery to a minor convictions should be affirmed.

Korsmo, J.

---

[4] Z.H. consumed the "five sack" after he had consumed the marijuana supplied by the defendant, thus preventing any testing from linking the results specifically to Crowder. 2VRP at 321.

5