**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUL 0 3 2014

FOR CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on July 3, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 89235-1 |
| Respondent, | ) | |
| v. | ) | En Banc |
| WILLIAM NEAL FRANCE, | ) | |
| Petitioner. | ) | Filed _____ JUL 0 3 2014 _____ |

MADSEN, C.J.—William Neal France was convicted of five counts of felony harassment and one count of witness intimidation for making multiple harassing calls to his former attorneys. Consistent with the pattern jury instructions on witness intimidation, the jury was instructed that "[a]s used in these instructions, threat *also* means to communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time." Clerk's Papers (CP) at 40 (Instruction 9) (emphasis added); *see* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.24, at 71-72 (3d ed. 2008) (WPIC). There was no evidence presented that France, who was in jail when he made the calls, intended immediately to use force against any person present at the time of the charged

conduct. France contends under the law of the case doctrine, his felony harassment convictions must be dismissed. The State argues that the instructions, taken as a whole, accurately informed the jury of the elements of felony harassment and that it presented sufficient evidence to sustain France's convictions. We agree, and affirm.

FACTS

In 2010, attorney Anita Paulsen represented William Neal France in a prior case that resulted in France receiving a drug offender sentencing alternative. After sentencing in that case, France began leaving obscene and threatening voicemails for Paulsen and Nina Beach, a social worker involved in the case. Paulsen's supervisor, Lisa Duagaard, sent France a letter telling him to stop making harassing calls. France did not heed the request and began calling Duagaard as well. In November 2011, France pleaded guilty to nine counts of felony harassment and received an exceptional sentence of 180 months. *State v. France*, 176 Wn. App. 463, 308 P.3d 812 (2013), *review denied*, 179 Wn.2d 1015 (2014); CP at 1, 5. The November 2011 judgment and sentence incorporated a no contact order directing France to have no contact with Paulsen, Beach, and Duagaard. *France*, 176 Wn. App. at 466, 473-74.

Within hours of being sentenced, France left more threatening voice mails for Duaggard and Paulsen. Based on these and other calls, in December 2011 France was charged with five more counts of felony harassment under RCW 9A.46.020. After the jury had been selected but before opening statements, the State amended the information to add a witness intimidation charge under RCW 9A.72.110.

2

At trial, the State offered the testimony of Paulsen and Duaggard and played recordings of some of the voice mails for the jury. Among other things, the jury was instructed that

> [a] person commits the crime of harassment when he, without lawful authority, knowingly threatens maliciously to do any act which is intended to substantially harm another person with respect to his or her physical health or safety and when he or she by words or conduct places the person threatened in reasonable fear that the threat will be carried out.

CP at 37 (Instruction 6). Consistent with instruction 6, the to-convict instructions on felony harassment instructed the jury that to convict France of felony harassment it must find beyond a reasonable doubt that France (among other things):

> (1) . . . . knowingly threatened:
>     (a) maliciously to do any act which was intended to substantially harm [the victims] with respect to [their] physical health or safety; and
> (2) That the words or conduct of the defendant placed [the victims] in reasonable fear that the threat would be carried out.

*Id.* at 38 (Instruction 7). The other four felony harassment to-convict instructions used the same language. The witness intimidation to-convict instruction said in relevant part that the State must prove "[t]hat on or about December 27, 2011, the defendant by use of a threat against a current or prospective witness attempted to induce that person to absent herself from an official proceeding." *Id.* at 48 (Instruction 17). The jury was also instructed that

> [a]s used in these instructions, threat *also* means to communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time.

3

> To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat.

*Id.* at 40 (Instruction 9) (emphasis added). The jury convicted on all six charges. France received another exceptional sentence, this time for 120 months.

France appealed, making several arguments, including that there was insufficient evidence of "threat" as defined by the jury instructions to sustain his convictions because there was no evidence he intended to immediately use force against someone present. Br. of Appellant at 1, 9-10. The State contended that instruction 9's definition of "threat" was "superfluous with regard to the felony harassment charges, because 'threat' is already defined within the essential elements of that crime." Br. of Resp't at 13. However, the State suggested that "such is not the case with regard to witness intimidation" and it "concede[d] that France is correct that count VI [witness intimidation] must be reversed and dismissed." *Id.* at 12-13. The Court of Appeals accepted the State's concession and otherwise affirmed the convictions, finding that instruction 9 did not add an element of felony harassment that the State was required to prove. *State v. France*, noted at 175 Wn. App. 1024, 2013 WL 3130408, at *4-5, *7 (Wash Ct. App. June 17, 2013).[1]

---

[1] The Court of Appeals described the arguments and noted that no definition of "threat" was embedded in the witness intimidation instructions but did not independently analyze whether the law of the case doctrine demanded the conviction be dismissed. *State v. France*, 2013 WL 3130408, at *5. We have not been asked to review this issue or the propriety of the State's concession.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

France petitioned for review of one issue: "Whether the convictions must be reversed due to insufficient evidence under the 'law of the case' doctrine?" Pet. for Review at 1. We granted France's petition and now affirm.

ANALYSIS

This case is framed by two fundamental principles of law: the first constitutional, the second arising from the nature and exigencies of appellate review. The first principle is that constitutional due process requires that the State prove every element of the crime beyond a reasonable doubt. *State v. Warren*, 165 Wn.2d 17, 26, 195 P.3d 940 (2008) (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). The second principle is that "jury instructions not objected to become the law of the case." *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998) (citing *State v. Hames*, 74 Wn.2d 721, 725, 446 P.2d 344 (1968)). If the jury is instructed (without objection) that to convict the defendant, it must be persuaded beyond a reasonable doubt of some element that is not contained in the definition of the crime, the State must present sufficient evidence to persuade a reasonable jury of that element regardless of the fact that the additional element is not otherwise an element of the crime. *Id.* (citing *State v. Lee*, 128 Wn.2d 151, 159, 904 P.2d 1143 (1995)).[2]

---

[2] We recognize that "[t]he term 'law of the case' means different things in different circumstances," several of which are not implicated by this case. *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 113, 829 P.2d 746 (1992) (citing 15 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: JUDGMENTS § 380, at 55 (4th ed. 1986)). In this

France argues that his convictions must be reversed under the law of the case doctrine because the first paragraph of instruction 9 defined "threat" in a way that the evidence did not support. The State argues that other instructions, including the felony harassment to-convict instructions, contained definitions of "threat" that were amply supported by the evidence. We agree with the State.

All of the elements of the charged crime must appear in the to-convict instruction "'because it serves as a yardstick by which the jury measures the evidence to determine guilt or innocence.'" *State v. Johnson*, 180 Wn.2d 295, 306, 325 P.3d 135 (2014) (internal quoting marks omitted) (quoting *State v. Sibert*, 168 Wn.2d 306, 311, 230 P.3d 142 (2010)). Where an erroneous to-convict instruction creates a new element of the crime, the instruction will become the law of the case and the State will be required to prove that element. *Hickman*, 135 Wn.2d at 101 (requiring State to prove venue under law of the case doctrine—even though venue was not a statutory element of insurance fraud—because the State did not object to an erroneous to-convict instruction informing the jury it must find beyond a reasonable doubt "'[t]hat the act occurred in Snohomish County, Washington'" (emphasis omitted)). No party in this case argues that the elements listed in the to-convict instructions were erroneous or were not supported by the evidence presented. Instead, France contends that the law of the case doctrine applies to all instructions and thus we must reverse

---

case, we are concerned only with "the 'rule that the instructions given to the jury by the trial court, if not objected to, shall be treated as the properly applicable law.'" *Id.* (quoting ORLAND & TEGLAND, *supra*, at 56).

6

his conviction unless the State presented sufficient evidence that he "communicate[d], directly or indirectly, the intent immediately to use force against any person who is present at the time." CP at 40 (Instruction 9). In other words, he argues that intent to immediately use force against a person who is present at the time of the threat is a fact that must be proved by virtue of the law of the case doctrine.

France is correct that the law of the case doctrine applies to all unchallenged instructions, not just the to-convict instruction. *Tonkovich v. Dep't of Labor & Indus.*, 31 Wn.2d 220, 225, 195 P.2d 638 (1948) (noting that "the sufficiency of the evidence to sustain the verdict is to be determined by the application of the instructions and rules of law laid down in the charge"); *accord City of Spokane v. White*, 102 Wn. App. 955, 964-65, 10 P.3d 1095 (2000); *State v. Price*, 33 Wn. App. 472, 474-75, 655 P.2d 1191 (1982); *Englehart v. Gen. Elec. Co.*, 11 Wn. App. 922, 923, 527 P.2d 685 (1974). But "[e]ach instruction must be evaluated in the context of the instructions as a whole." *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289 (1993) (citing *State v. Coe*, 101 Wn.2d 772, 788, 684 P.2d 668 (1984)). We have recently reemphasized this principle in *Johnson*, 180 Wn.2d at 305.[3]

---

[3] While not before us, we note that "[i]t is error to give an instruction which is not supported by the evidence" presented in the case. *Benn*, 120 Wn.2d at 654 (citing *State v. Hughes*, 106 Wn.2d 176, 191-92, 721 P.2d 902 (1986)). However, a defendant is not necessarily entitled to reversal merely because a definitional instruction, taken in isolation, pertains to facts not in evidence. Even if an instruction was given in error, the error may be harmless. *State v. Berube*, 150 Wn.2d 498, 505, 79 P.3d 1144 (2003) (citing *Neder v. United States*, 527 U.S. 1, 9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).

We note that all the instructions at issue here appear to be drawn from the WPIC.[4] Specifically, the definition of "threat" in instruction 9 was drawn partially from 11A WPIC 115.52, the definition of "threat" for the purposes of intimidating a witness, and partially from the "true threat" portion of 11 WPIC 2.24, the general definition of "threat." *Compare* CP at 40, *with* 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL WPIC 115.52, at 438 (3d ed. 2008) (Intimidating a Witness—Threat—Definition) and 11 WPIC 2.24 (Threat—Definition).[5] The note on use for 11A WPIC 115.52 instructs the parties to use "also" when "this instruction is used with one or more of the definitions contained in WPIC 2.24." 11A WPIC 115.52, at 438.

France is correct that under some circumstances, the State may be required to prove facts not specifically contained in the to-convict instruction, not as elements but because those facts serve some other function that requires the State to prove them, such as a "true threat" or "sexual gratification." *See, e.g., State v. Allen*, 176 Wn.2d 611, 626, 294 P.3d 679 (2013) ("true threat") (quoting *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004)); *State v. Stevens*, 158 Wn.2d 304, 309-10, 143 P.3d 817

---

[4] The felony harassment to-convict instructions given were substantially similar to 11 WPIC 36.07.03. *Compare* CP at 38, 43-46, *with* 11 WPIC 36.07.03, at 584 (Harassment—Felony—Previous Conviction—Elements). Instruction 6, which explained the crime of harassment, was drawn from 11 WPIC 36.07.01. *Compare* CP at 37, *with* 11 WPIC 36.07.01, at 579 (Harassment—Felony—Definition).

[5] "Threat," for purposes of intimidating a witness under RCW 9A.72.110, means either "(i) [t]o communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time or (ii) [t]hreat as defined in RCW 9A.04.110(27)." RCW 9A.04.110(27) is the general definition of "threat" for the criminal code and substantially resembles 11 WPIC 2.24. It has recently been recodified at RCW 9A.04.110(28).

8

(2006) ("sexual gratification"). France suggests that this case is analogous to *Stevens*, where this court required the State to "show sexual gratification as part of its burden to prove sexual contact," even though sexual gratification was not an element of the crime. 158 Wn.2d at 309.; RCW 9A.44.083(1) (child molestation), .010(2) (defining sexual contact within the criminal code). We disagree. *Stevens* turned on the statutory elements of child molestation, which includes sexual contact, and the statutory definition of "sexual contact," which defines sexual contact in terms of sexual gratification. 158 Wn.2d at 307; RCW 9A.44.083(1), .010(2)). This case, on the other hand, turns on whether an instruction containing one of many statutory definitions of the term "threat," at least one of which is contained in the to-convict instruction and that has a common meaning as well, created an additional fact the State was required to prove.[6]

Similar to sexual gratification, even though "true threat" is not an element of felony harassment, the State still must prove it. However, this is because "true threat" defines and limits the scope of criminal statutes, such as felony harassment, that potentially encroach upon protected speech. *Allen*, 176 Wn.2d at 626 (quoting *Kilburn*, 151 Wn.2d at 43). The First Amendment broadly protects speech, but not "true threats"; statements "made in a 'context or under such circumstances wherein a

---

[6] The State insists that "the first paragraph of the additional definitional instruction was superfluous as to the felony harassment counts because its use of the word 'also.'" Suppl. Br. of Resp't at 11-12. We disagree. No jury instruction in this case was superfluous; each went to the charged crimes. The State points to no case where the law of the case doctrine was disregarded on the theory that an instruction in a criminal case was superfluous.

reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life' of another person." *Kilburn*, 151 Wn.2d at 43 (alteration in original) (internal quotation marks omitted) (quoting *State v. Williams*, 144 Wn.2d 197, 208-09, 26 P.3d 890 (2001)). We require the State to prove a "true threat" to prevent encroachment on protected speech. France suggests no similar reason to require the State to prove each definition of "threat" included in these instructions.

Simply put, while the State may sometimes be required to prove facts outside the to-convict instruction, France does not persuade us that this is such a case.

In addition, we have already rejected the notion that multiple definitions of statutory terms necessarily create either new elements or alternate means of committing a crime. *See State v. Smith*, 159 Wn.2d 778, 785, 154 P.3d 873 (2007); *State v. Linehan*, 147 Wn.2d 638, 646, 56 P.3d 542 (2002) (different definitions of "assault" do not create alternative means). The Court of Appeals has already rejected the contention that an instruction that listed "10 definitions of 'threat' under RCW 9A.04.110(25)" created "10 alternative means" of committing the crime. *State v. Marko*, 107 Wn. App. 215, 218-19, 27 P.3d 228 (2001) (citing *State v. Laico*, 97 Wn. App. 759, 764, 987 P.2d 638 (1999)). The court found that "[i]n describing the various kinds of threats, the legislature was not creating additional elements to, but merely defining an element of, a potential crime." *Id.* at 219-20; *accord Smith*, 159 Wn.2d at 785 (citing *Linehan*, 147 Wn.2d at 646).

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We agree. The State was not required to prove "the intent immediately to use force against any person who is present at the time" to prove felony harassment. *See* RCW 9A.46.020. That is only one of many definitions of "threat" our statutes provide. The instructions given in this case were consistent with the felony harassment statute. Instruction 9 said that "[a]s used in these instructions, threat *also* means to communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time." CP at 40 (emphasis added). Rather than creating an element to be proved by the State, instruction 9 merely provided an alternative definition. When read in tandem with the other instructions, including the to-convict instructions, it correctly informed the jury of the law. *Compare* CP at 38 (Instruction 7) (to-convict instruction), *with* RCW 9A.46.020(1)(a)(iv) (felony harassment)[7] and RCW 9A.04.110(28)(j) (relevant "threat" definition).[8]

We find the State presented sufficient evidence of the elements of harassment.

## CONCLUSION

France is not entitled to have his felony harassment convictions vacated under the law of the case doctrine when the to-convict instruction correctly recited the

---

[7]
        (1) A person is guilty of harassment if:
        (a) Without lawful authority, the person knowingly threatens:
    . . . .
        (iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety.
RCW 9A.46.020.

[8] "'Threat' means to communicate . . . the intent: . . . To do any other act which is intended to harm substantially the person threatened or another with respect to his or her health, safety, business, financial condition, or personal relationships." RCW 9A.04.110(28)(j).

11

elements of the crime but the jury was instructed on more than one definition of

"threat," one of which the State did not prove. We affirm.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Madsen, C.J.

WE CONCUR:

Wiggins, J.

Owens, J.

González, J.

Fairhurst, J.

Koromo, J.P.T.

Stephens, J.

Ellington, J.P.T.