

This opinion was filed for record

at 8:00 am on July 13, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

　　　　　　　Respondent,

v.

JOHN HENRY JOHNSON,

　　　　　　　Petitioner.

NO. 93453-3

EN BANC

Filed　JUL 1 3 2017

STEPHENS, J.—This case comes to us as a sufficiency of the evidence challenge to John Johnson's conviction for second degree theft of an access device. Yet, resolving this challenge moves us beyond mere consideration of the evidence in Johnson's case to broader consideration of how federal due process law and Washington's "law of the case" doctrine intersect. Specifically, we must decide whether the United States Supreme Court's recent decision in *Musacchio v. United States*, ___ U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016), supersedes our decision in *State v. Hickman*, 135 Wn.2d 97, 954 P.2d 900 (1998). Under *Hickman*, the State

must establish all elements it agrees to include in the to-convict instruction, even if not required by statute, because unchallenged instructions become the "law of the case." *Id.* at 102. In *Musacchio*, the Supreme Court rejected a "law of the case" argument and held that due process requires only that evidentiary sufficiency claims "be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction." 136 S. Ct. at 715.

Here, the jury was instructed that an element of the theft charge included Johnson's intent "to deprive the [victim] of the access device." Clerk's Papers (CP) at 157 (to-convict instruction). The jury convicted Johnson, and he appealed. The Court of Appeals affirmed the conviction, holding that neither the statute nor the "law of the case" doctrine placed the burden of proving the erroneously added element on the State. That court concluded *Musacchio* supersedes Washington's "law of the case" doctrine because Washington has adopted the federal due process standard for evidentiary sufficiency and thus Supreme Court precedent interpreting that standard controls.[1]

We disagree because our state "law of the case" doctrine does not rest on federal due process principles. This long standing doctrine has developed through the common

---

[1] The position of Division One of the Court of Appeals in this case is also reflected in *State v. Tyler*, 195 Wn. App. 385, 382 P.3d 699 (2016). Division Three has taken a contrary view. *See State v. Jussila*, 197 Wn. App. 908, 392 P.3d 1108 (2017). As of this writing, Division Two has not expressed a position, but has indicated the issue is for this court to decide. *See State v. Makekau*, 194 Wn. App. 407, 415 n.2, 378 P.3d 577 (2016).

law and state procedural rules, and remains intact following *Musacchio*. Because the State has not demonstrated that our "law of the case" doctrine is incorrect and harmful, or that its legal underpinnings have been eroded, we adhere to the framework established in *Hickman*. Accordingly, we hold that the State was required to prove Johnson specifically intended to steal an access device. Because sufficient evidence supports this element, we affirm Johnson's conviction.

## FACTS AND PROCEDURAL HISTORY

Kendra Farmer was shopping with her family at the Pottery Barn store at Alderwood Mall in Lynnwood. Her husband, Ryan, and one of their children were near the front of the store; Kendra and another child were near a cash register in a different part of the store. While speaking with a sales associate near the cash register, Kendra left her Coach brand purse unattended on a display couch a few feet away. The purse contained her wallet, credit cards, and debit cards, among other items.

The purse had a heavy metal chain that made a distinct sound when moved. Ryan heard that sound and, expecting to see his wife, instead saw Johnson picking up the purse and attempting to place it inside a plastic bag. Ryan confronted Johnson and told him the purse did not belong to him. Johnson handed the purse to Ryan and then turned around to walk in the opposite direction. Ryan handed the purse to Kendra, called the police, and followed Johnson outside until the police arrived.

Johnson was charged with one count of second degree theft of an access device pursuant to RCW 9A.56.040(1)(d).[2] That statute provides that "[a] person is guilty of theft in the second degree if he or she commits theft of . . . [a]n access device." RCW 9A.56.040(1)(d).[3] "Theft" means "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with *intent to deprive him or her of such property* or services." RCW 9A.56.020(1)(a) (emphasis added).

At trial, the to-convict instruction stated,

> To convict the defendant of the crime of theft in the second degree, each of the following four elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 22nd day of August, 2013, the defendant wrongfully obtained or exerted unauthorized control over property of another;
> (2) That the property was an access device;

---

[2] The information stated Johnson

did wrongfully obtain or exert unauthorized control over an access device of another, to-wit: a credit card belonging to Kendra Farmer, with intent to deprive such other of such property; and the crime was committed while [Johnson] was under community custody, as provided by RCW 9.94A.525(19), proscribed by RCW 9A.56.040(1)(c).

CP at 193. As the Court of Appeals recognized, both the information and "[t]he judgment and sentence incorrectly state[d] that Johnson was convicted of second degree theft under RCW 9A.56.040(1)(c), when he was actually convicted under RCW 9A.56.040(1)(d)." *State v. Johnson*, No. 73113-1-I, slip op. at 9 n.9 (Wash. Ct. App. June 6, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/731131.pdf. The Court of Appeals remanded to the trial court to correct the error. *Id.* at 9.

[3] An "access device" is

any card, plate, code, account number, or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services, or anything else of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by paper instrument.

RCW 9A.56.010(1).

-4-

> (3) That the defendant *intended to deprive the other person of the access device*; and
> (4) That this act occurred in the State of Washington.

CP at 157 (emphasis added). After receiving this instruction, the jury found Johnson guilty. *Id.* at 147.

Johnson timely appealed his conviction to Division One of the Court of Appeals. Johnson contended that insufficient evidence supported the jury's verdict because under both the theft statute and the to-convict instruction, the State was required, but failed, to prove his specific intent to steal Kendra's access device. Appellant's Opening Br. at 6. The Court of Appeals affirmed, holding that neither the theft statute nor the to-convict instruction placed such a requirement on the State. *State v. Johnson*, No. 73113-1-I, slip op. at 4, 7 (Wash. Ct. App. June 6, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/731131.pdf. With regard to the theft statute, that court found there was sufficient evidence to sustain the conviction because the State was required to prove only that Johnson intended to deprive Kendra of her purse and its contents and, separately, that the contents included an access device. *Id.* at 4-5. With regard to the to-convict instruction, that court held that although the instruction erroneously included as an element the specific intent to deprive Kendra of an access device, the Supreme Court's decision in *Musacchio* rendered the instruction irrelevant in reviewing a claim for insufficient evidence. *Id.* at 6. Because Washington's "sufficiency inquiry is based on the Fourteenth Amendment's due process clause and

-5-

the *Jackson* [*v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)] standard," and because the Supreme Court "is the final arbiter on the meaning and interpretation of the United States Constitution," its holding that a "Fourteenth Amendment evidentiary sufficiency challenge must be assessed against the elements of the *charged crime*, not against the erroneously heightened elements set forth in a jury instruction . . . supersedes all inconsistent interpretations by" Washington courts. *Id.* at 6-7. The Court of Appeals thus concluded the State need prove only the statutory elements of the crime for which there was sufficient evidence. *Id.* at 7.

Johnson then filed a petition for review in this court, which we granted. *State v. Johnson*, 186 Wn.2d 1025, 385 P.3d 125 (2016).

## ANALYSIS

Johnson contends there is insufficient evidence to support his conviction because the State did not prove he specifically intended to steal any access device in Kendra's purse. Sufficiency review secures the fundamental protection of due process of law. *Jackson*, 443 U.S. at 319. Under both the federal and state constitutions, due process requires that the State prove every element of a crime beyond a reasonable doubt. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3; *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746

(2016).[4] In reviewing a claim for insufficient evidence, we therefore consider "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion) (emphasis omitted) (quoting *Jackson*, 443 U.S. at 319). Johnson contends this standard is not met because both the theft statute and the "law of the case" doctrine required the State to prove his specific intent to steal an access device, which it failed to do. Pet. for Review at 12. To assess Johnson's sufficiency claim, we consider the State's burden of proof under the theft statute and the "law of the case" doctrine, as well as *Musacchio*'s effect on our "law of the case" doctrine.

I.     Specific Intent To Steal an Access Device Is Not a Statutory Element of Second Degree Theft of An Access Device

The statute at issue provides in relevant part, "A person is guilty of theft in the second degree if he or she commits theft of . . . [a]n access device."

---

[4] Although it appears "[t]he requirement of proof beyond a reasonable doubt ha[d] . . . only common law and statutory origins" before the *Winship* decision, *State v. Odom*, 83 Wn.2d 541, 546, 520 P.2d 152 (1974), this court has since indicated that the requirement also has a state constitutional component. *See, e.g., Rich*, 184 Wn.2d at 903. This is perhaps because "the text of CONST. art. I, § 3 and the . . . Fourteenth Amendment[] to the Federal Constitution are identical." *State v. Manussier*, 129 Wn.2d 652, 679, 921 P.2d 473 (1996); *see also State v. Ridgley*, 70 Wn.2d 555, 556, 424 P.2d 632 (1967) ("When the words used in the state constitution are similar to the words used in the Constitution of the United States, the same interpretation will be given to the state constitution as is afforded to the United States Constitution by the United States Supreme Court.").

RCW 9A.56.040(1)(d). "Theft" means "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1)(a). A credit card is an "access device." RCW 9A.56.010(1).

Johnson argues that when read side by side, the theft statute (RCW 9A.56.020(1)(a)) and the second degree theft statute (RCW 9A.56.040(1)(d)) required the State to prove intent to steal Kendra's access device, rather than her property in general. Appellant's Opening Br. at 6-7; Suppl. Br. of Pet'r at 5-6. The theft statute requires "'intent to deprive [the other] of *such property*,'" which under the second degree theft statute is an access device. Appellant's Opening Br. at 6-7 (quoting RCW 9A.56.020(1)(a)); Suppl. Br. of Pet'r at 5-6.

The State counters that Johnson misinterprets the theft statute, which includes two separate elements: (1) intent to take the property and (2) the nature of the property taken. Suppl. Br. of Resp't at 6. The State was therefore required to prove only that Johnson intended to deprive Kendra of her property and that the property was an access device. Br. of Resp't at 7.

Although our cases do not explicitly state the elements of second degree theft of an access device, precedent discussing the elements of first and second degree theft of property over a certain value suggest that the State is correct. "A person is guilty of

-8-

theft in the first degree" or "the second degree" if "he or she commits theft of . . . [p]roperty or services which exceed(s)" a certain dollar amount. RCW 9A.56.030(1)(a), .040(1)(a). These provisions rely on the same theft statute above. RCW 9A.56.020(1)(a) ("[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services"). Two cases are particularly helpful in interpreting these provisions.

In *State v. Holmes*, this court rejected the defendants' argument that the welfare fraud statute was invalid because the defendants had to refer to numerous regulations to determine the amount of any overpayment. 98 Wn.2d 590, 596, 657 P.2d 770 (1983). In doing so, this court compared the requirements for welfare fraud and theft. *Id.* at 596-97. This court stated,

> In a prosecution for theft under RCW 9A.56 it is not necessary that the defendant either know the value of the property he has taken or intend to acquire a particular dollar amount of property. Neither factor is an element of theft even though "intent to deprive" is a necessary element.

*Id.* at 596. The court in *Holmes* relied on *State v. Delmarter*, 94 Wn.2d 634, 618 P.2d 99 (1980), for this statement.

In *Delmarter*, this court affirmed the defendant's conviction for attempted first degree theft because there was sufficient evidence to prove the essential elements of the crime. *Id.* at 637-38. In discussing the essential elements of attempted first degree theft,

this court rejected the defendant's argument that the State must prove he knew the value of the property stolen. *Id.* at 637. This court stated that the theft statute and the statute defining theft in the first degree did "not include as an element of the crime that defendant must have knowledge of the value of the property." *Id.* Rather, the relevant inquiry was whether the "defendant intended to steal from the camouflaged cash drawer." *Id.*

These cases suggest that the State was required to prove, first, that Johnson intended to steal an item and, second, that the item stolen was of the type required by statute. *See also State v. Kinneman*, 120 Wn. App. 327, 338-39, 84 P.3d 882 (2003) ("[t]o carry its burden of proof for each charge, the State must prove the following elements beyond a reasonable doubt: (1) that [the defendant] exerted unauthorized control over [the] property and (2) that the value of the property exceeded" a certain dollar amount). Johnson's argument that under the theft statute the State had the burden of proving intent to deprive Kendra of her access device thus fails.

The main case on which Johnson relies, *State v. Lust*, 174 Wn. App. 887, 300 P.3d 846 (2013), does not change our view of the statute. In *Lust*, the Court of Appeals held the defendant's second and third degree theft convictions did not violate double jeopardy because they required proof of different elements. *Id.* at 890. In so holding, that court reasoned that each crime had a different intent element. *Id.* at 892. We find

-10-

*Lust* unpersuasive for two reasons. First, unlike in the present case, the defendant in *Lust* was convicted for two separate acts: third degree theft of property under a certain value (for stealing the purse) and second degree theft of an access device (for removing credit and debit cards from the wallet inside the purse). *Id.* at 889. Second, the appeals court in *Lust* inconsistently described the intent element for the different degrees of theft. *Id.* at 892. The appeals court stated the third degree theft conviction required intent "to deprive [the victim] of *the purse*," while the second degree theft conviction required intent "to deprive [the victim] of *the credit and debit cards*." *Id.* (emphasis added). While the intent requirement for the third degree theft conviction did not reference the value of the property, the intent requirement for the second degree theft conviction referenced the credit and debit cards, i.e., the access devices. It is unclear why third degree theft would not contain an additional mens rea requirement for the nature of the property taken, but second degree theft would. We therefore disapprove of *Lust* to the extent it erroneously reads the second degree theft statute to require specific intent to steal an access device. The statute does not impose this requirement.

II.     Under Washington's "Law of the Case" Doctrine, the Unchallenged To-Convict Instruction, Which Erroneously Required Proof of Specific Intent To Steal an Access Device, Modified the State's Burden of Proof

Johnson next contends that even if the theft statute did not require the State to prove his specific intent to steal an access device, the State still carried such a burden

because that element was included in the to-convict instruction, to which the State did not object. Suppl. Br. of Pet'r at 11; CP at 157. Under Washington's "law of the case" doctrine, the State must prove otherwise unnecessary elements included without objection in the to-convict instruction. Suppl. Br. of Pet'r at 11-12.[5] Here, the "law of the case" doctrine required the State to prove Johnson specifically intended to steal Kendra's access device. *Id.* at 19-20. The State does not dispute this contention, and Johnson is correct.

Washington's "law of the case" doctrine "derives from . . . common law," *Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005), and "is an established doctrine with roots reaching back to the earliest days of statehood," *Hickman*, 135 Wn.2d at 101. The doctrine is "multifaceted" and "means different things in different circumstances." *Roberson*, 156 Wn.2d at 41. Most commonly, the doctrine "stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation." *Id.* In addition, and relevant here, the doctrine "refers to the principle that jury instructions

---

[5] Although *Musacchio* and several of our cases discuss the "law of the case" doctrine in the context of general jury instructions, we consider only the doctrine's application to the to-convict instruction. *See, e.g., State v. France*, 180 Wn.2d 809, 816, 329 P.3d 864 (2014) ("[T]he law of the case doctrine applies to all unchallenged instructions, not just the to-convict instruction. But '[e]ach instruction must be evaluated in the context of the instructions as a whole.'" (second alteration in original) (citations omitted) (quoting *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289 (1993))).

that are not objected to are treated as the properly applicable law for purposes of appeal." *Id.*

This latter formulation of the "law of the case" doctrine has frequently been invoked to delineate the parties' burdens of proof. *See Millies v. LandAmerica Transnation*, 185 Wn.2d 302, 313, 372 P.3d 111 (2016) ("Unless there is a proper objection, jury instructions become the law of the case."); *Tonkovich v. Dep't of Labor & Indus.*, 31 Wn.2d 220, 225, 195 P.2d 638 (1948) ("[T]he parties are bound by the law laid down by the court in its instructions where . . . the charge is approved by counsel for each party, no objections or exceptions thereto having been made at any stage. In such case, the sufficiency of the evidence to sustain the verdict is to be determined by the application of the instructions."); *Pepperall v. City Park Transit Co.*, 15 Wash. 176, 180, 45 P. 743 (1896) ("[W]hether the instruction in question was rightfully or wrongfully given, it was binding and conclusive upon the jury, and constitutes . . . the law of the case.").

In criminal cases,

> the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the "to convict" instruction.
>     On appeal, a defendant may assign error to elements added under the law of the case doctrine. Such assignments of error may include a challenge to the sufficiency of the evidence of the added element.

*Hickman*, 135 Wn.2d at 102 (citations omitted).

Under our controlling precedent on the "law of the case" doctrine, the State was obligated to prove Johnson's specific intent to steal an access device because that element was included in the to-convict instruction and the State did not object. The remaining question is whether the Supreme Court's decision in *Musacchio* changes this result.

III.    Washington's "Law of the Case" Doctrine Remains Intact Because It Is Neither Incorrect and Harmful Nor Superseded by *Musacchio*

While recognizing that Washington follows the "law of the case" doctrine as described above, the Court of Appeals held that *Musacchio* supersedes our precedent. *Johnson*, slip op. at 7. The State embraces this position, arguing that *Hickman* "no longer controls a challenge to the sufficiency of the evidence where additional elements are included in the to-convict instruction." Suppl. Br. of Resp't at 5.

We disagree, and hold that our long standing "law of the case" doctrine continues to apply. Stare decisis "'promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Keene v. Edie*, 131 Wn.2d 822, 831, 935 P.2d 588 (1997) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991)). We therefore "do not lightly set aside precedent." *State v. Kier*, 164 Wn.2d 798, 804, 194 P.3d 212 (2008). Instead, we require "a clear showing that an established rule is incorrect and harmful before it is abandoned." *In re*

*Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). We may also abandon our precedent "when [its] legal underpinnings . . . have changed or disappeared altogether." *W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66, 322 P.3d 1207 (2014). Neither of these circumstances applies here.

### A. The State Has Not Shown That Washington's "Law of the Case" Doctrine Is Incorrect and Harmful

While we may set aside our precedent when it is both incorrect and harmful, the "party seeking to overrule a decision" must make this showing. *Kier*, 164 Wn.2d at 804; *State v. Barber*, 170 Wn.2d 854, 864, 248 P.3d 494 (2011). The State does not attempt to demonstrate that *Hickman* is incorrect and harmful.

Moreover, we will not "overrule prior decisions based on arguments that were adequately considered and rejected in the original decisions themselves." *Barber*, 170 Wn.2d at 864. The court in *Hickman* refused to abandon the "law of the case" doctrine at the State's urging. 135 Wn.2d at 105. The court noted that the "law of the case" doctrine "benefits the system by encouraging trial counsel to review all jury instructions to ensure their propriety before the instructions are given to the jury." *Id.* This is consistent with the underlying goal of our "law of the case" doctrine "to promote finality and efficiency in the judicial process," *Roberson*, 156 Wn.2d at 41, as well as encourage general notions of fairness. *See, e.g., State v. Camarata*, No. 32960-7-III,

-15-

slip op. at 13 (Wash. Ct. App. Jan. 19, 2017) (unpublished), http://www. courts.wa.gov/opinions/pdf/329607_unp.pdf (the doctrine "serves to avoid prejudice to the parties and ensure that the appellate courts review a case under the same law considered by the jury. The common vantage point is particularly important . . . where the additional element . . . was consciously believed by the State to be a required proof" (citation omitted)). We thus decline to overrule *Hickman* on this basis.

> B. The Legal Underpinnings of Washington's "Law of the Case" Doctrine Have Not Changed or Been Eroded, and *Musacchio* Does Not Supersede Our Doctrine

We have recently recognized that we may reconsider our precedent when its legal underpinnings have changed or disappeared. *W.G. Clark*, 180 Wn.2d at 66. The State appears to urge the court to do so, contending our analysis must follow the Supreme Court's interpretation of the federal standard for evidentiary sufficiency challenges. Wash. Supreme Court oral argument, *State v. Johnson*, No. 93453-3 (Feb. 28, 2017), at 30 min., 42 sec. through 31 min., 10 sec., *recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. Although stare decisis does not prevent us from "fully considering all United States Supreme Court guidance on federal issues," we conclude the Supreme Court's holding in *Musacchio* does not call into question the underpinnings of our "law of the case" doctrine. *W.G. Clark*, 180 Wn.2d at 66.

-16-

As mentioned above, Washington has adopted the federal standard for sufficiency review. *See Green*, 94 Wn.2d at 221. Washington, however, has its own "law of the case" doctrine, independent of federal law. *See, e.g.*, DAVID F. HERR, ROGER S. HAYDOCK & JEFFREY W. STEMPEL, MOTION PRACTICE § 16.06, at 16-47 (7th ed. 2016) ("Federal law generally governs the application of the 'law of the case' principle . . . in federal courts; state doctrine governs state court litigation."). Rather than follow federal law, Washington's doctrine relies on Washington common law and procedural rules. *See Roberson*, 156 Wn.2d at 41 (common law); *Hickman*, 135 Wn.2d at 105 (procedural rules).[6] This foundation leads us to conclude that *Musacchio* does not supersede our "law of the case" doctrine.

*Musacchio* discusses sufficiency review only in the context of a federal statute and the federal "law of the case" doctrine. *Musacchio* therefore resolves how federal

_____

[6] Johnson contends the doctrine is also based on the state constitution, Suppl. Br. of Pet'r at 18-19, and relies on *Pepperall*, where we stated,

> [O]ur constitution provides that trial judges "shall declare the law." It is the duty of the court in all cases to decide questions of law . . . and it frequently becomes a question of law . . . to determine whether, in a given case, there is any evidence to be submitted to the jury in support of an issue raised by the pleadings.

15 Wash. at 183 (citation omitted). Although the court in *Pepperall* did not cite a state constitutional provision, Johnson cites article IV, section 16, which provides that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." WASH. CONST. art. IV, § 16. Johnson again cites article IV as the source of this court's "inherent rule making power." Suppl. Br. of Pet'r at 19. This provision therefore suggests that "[u]nder the Washington Constitution and Washington criminal rules, a jury applies only the law provided by the court." *Jussila*, slip op. at 20.

courts are to determine the elements of a *federal crime* for purposes of sufficiency review. The Supreme Court explained that the federal "law of the case" doctrine "does not bear on how to assess a sufficiency challenge when a jury convicts a defendant after being instructed—without an objection by the Government—on all charged elements of a crime plus an additional element." *Musacchio*, 136 S. Ct. at 716. Indeed, it described the doctrine as "'a misnomer'" in this context. *Id.* (quoting *United States v. Wells*, 519 U.S. 482, 487 n.4, 117 S. Ct. 921, 137 L. Ed. 2d 107 (1997)). The Supreme Court therefore rejected the federal "law of the case" doctrine, and adopted the rule that additional elements in jury instructions are not considered essential elements of federal crimes. *See id.* at 715.

The Supreme Court's holding did not and could not govern state crimes. *See, e.g., Montana v. Wyoming*, 563 U.S. 368, 378 n.5, 131 S. Ct. 1765, 179 L. Ed. 2d 799 (2011) (the "highest court of each State" is "'the final arbiter of what is state law'" (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236, 61 S. Ct. 179, 85 L. Ed. 139 (1940))); *see also Federated Publ'ns, Inc. v. Kurtz*, 94 Wn.2d 51, 57, 615 P.2d 440 (1980). This is because the evidentiary sufficiency standard "is concerned with the quantum of proof supporting a conviction, not with what acts must be proved." *State v. Rattana Keo Phuong*, 174 Wn. App. 494, 535, 299 P.3d 37 (2013). That "standard must be applied with explicit reference to the substantive elements of the

criminal offense as *defined by state law.*" *Jackson*, 443 U.S. at 324 n.16 (emphasis added); *see also United States v. Lopez*, 514 U.S. 549, 561 n.3, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995) ("Under our federal system, the 'States possess primary authority for defining and enforcing the criminal law.'" (internal quotation marks omitted) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 635, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993))); *Montana*, 563 U.S. at 377 n.5; *Kurtz*, 94 Wn.2d at 57.[7] In Washington, our "law of the case" doctrine dictates the elements of a state crime for purposes of sufficiency review. *Hickman* and cases following it are clear that unless the State objects, the to-convict instruction defines the essential elements of a crime. *See Hickman*, 135 Wn.2d at 102 (the State must prove "otherwise unnecessary elements" included in the to-convict instruction); *State v. France*, 180 Wn.2d 809, 815, 329 P.3d 864 (2014) (erroneous to-convict instructions "create[] a new element of the crime"); *State v.*

---

[7] The Court of Appeals in *Tyler* suggested that following *Musacchio* would be "in accordance with the understanding that it is the legislature, and not the trial court, that possesses the authority to create a crime." *Tyler*, 195 Wn. App. at 400. But *Musacchio* cannot be read as resting on any deference to legislative authority. *See Musacchio*, 136 S. Ct. at 715 n.2 ("[W]e express no view on the question whether sufficiency of the evidence at trial must be judged by reference to the elements charged in the indictment, even if the indictment charges one or more elements *not required by statute*." (emphasis added)). At any rate, this remains a matter of state law, and our legislature has never rejected judicial reliance on the "law of the case" doctrine to define the essential elements of a crime. *See, e.g.*, *Snohomish County v. Anderson*, 123 Wn.2d 151, 156, 868 P.2d 116 (1994) ("[T]he Legislature is presumed to be familiar with [this court's] judicial decisions . . . construing existing statutes and the state constitution."). In any event, judges hold the constitutional authority to "declare the law." WASH. CONST. art. IV, § 16.

*Makekau*, 194 Wn. App. 407, 415, 378 P.3d 577 (2016) (in *Hickman*, "venue became

a third element"); *State v. Barringer*, 32 Wn. App. 882, 888, 650 P.2d 1129 (1982)

(instruction stating the prescription was for a controlled substance became "a material

element of the charge"), *overruled in part on other grounds by State v. Monson*, 113

Wn.2d 833, 849-50, 784 P.2d 485 (1989); *cf. State v. McGary*, 37 Wn. App. 856, 860,

683 P.2d 1125 (1984) (given that the vehicle identification number was included only

in the information, it did not become "an element of the crime").[8] On appeal, a

defendant may challenge the sufficiency of the evidence of the added element.

*Hickman*, 135 Wn.2d at 102.

Nothing in *Musacchio* forecloses the application of other state or federal

doctrines in this context. The Supreme Court explained that an appellate court's review

of "a matter on which a party failed to object below . . . may well be constrained by

other doctrines such as waiver, forfeiture, and estoppel." *Musacchio*, 136 S. Ct. at 716.

Washington's "law of the case" doctrine falls within this category, as it derives from

"the nature and exigencies of appellate review." *France*, 180 Wn.2d at 814; *see also*

---

[8] Added elements become the law of the case only when they are included in instructions to the jury in part because the to-convict instruction "'serves as a yardstick by which the jury measures the evidence to determine guilt.'" *France*, 180 Wn.2d at 815 (quoting *State v. Johnson*, 180 Wn.2d 295, 306, 325 P.3d 135 (2014)); *see also State v. Benitez*, 175 Wn. App. 116, 124-25, 302 P.3d 877 (2013) (explaining that the "law of the case" doctrine applies only to jury instructions, not to charging documents, because the instructions and the information serve different purposes).

*Hickman*, 135 Wn.2d at 105. Specifically, the doctrine is premised on the procedural rule that "'*before error can be claimed on the basis of a jury instruction* given by the trial court, an *appellant must first show that an exception was taken to that instruction.*'" *State v. Salas*, 127 Wn.2d 173, 181, 897 P.2d 1246 (1995) (quoting *State v. Bailey*, 114 Wn.2d 340, 345, 787 P.2d 1378 (1990)); *see also Agranoff v. Morton*, 54 Wn.2d 341, 345, 340 P.2d 811 (1959) ("[T]he court, under [its] rule-making power, . . . required all exceptions to instructions to be taken before the cause was submitted to the jury."). In the context of criminal cases, this rule is contained in Criminal Rule (CrR) 6.15(c), which "'requires that *timely* and *well stated objections* be made to instructions'" before they are given to the jury. *Salas*, 127 Wn.2d at 182 (quoting *State v. Scott*, 110 Wn.2d 652, 685-86, 757 P.2d 492 (1988)); *see also Hickman*, 135 Wn.2d at 105. In describing this rule, the court in *Hickman* suggested that it is based on principles of waiver, forfeiture, and estoppel. *See Hickman*, 135 Wn.2d at 104 (the "failure to request the desired instruction or object to those actually given *waives* any objection on appeal" (emphasis added)), 105 ("the parties must object to jury instructions . . . on penalty of *forfeiture* of such objection" (emphasis added)). Our "law of the case" doctrine is therefore unrestrained by *Musacchio*, which constrains only our sufficiency review.

Because Washington's "law of the case" doctrine is grounded in state common law and procedural rules, its legal underpinnings have not changed or disappeared. *Musacchio* therefore does not supersede our "law of the case" doctrine, which requires the State to prove every element in the to-convict instruction beyond a reasonable doubt.

IV.    The State Presented Sufficient Evidence To Support a Jury Finding That Johnson Specifically Intended To Steal an Access Device

Having established the parameters for our sufficiency review, we address whether sufficient evidence supports Johnson's conviction for second degree theft of an access device. We consider "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Green*, 94 Wn.2d at 221 (emphasis omitted) (quoting *Jackson*, 443 U.S. at 319). "When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.*

When "[s]pecific intent" is an element of the crime, it "cannot be presumed." *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994). However, it "can be inferred as a logical probability from all the facts and circumstances." *Id.* In proving

intent, "[c]ircumstantial evidence and direct evidence are equally reliable." *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004); *see also State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013).

Johnson contends the State failed to prove his specific intent to steal an access device because there is no evidence he looked inside the purse or otherwise knew it contained an access device. Pet. for Review at 12, 15. Without evidence of actual knowledge, a jury could not reasonably infer intent. *Id.* at 16-17; Suppl. Br. of Pet'r at 9. The State counters that because Johnson picked up the purse, folded it, and tried to conceal it inside a plastic bag, and then walked away, a jury could reasonably conclude that Johnson intended to steal the purse *and its contents*, which a jury could also reasonably infer included credit or debit cards. Suppl. Br. of Resp't at 7.

Undoubtedly, the State presented sufficient evidence from which a reasonable jury could infer Johnson intended to steal Kendra's purse. Ryan testified that Johnson grabbed the purse and attempted to put it inside a plastic bag. Verbatim Report of Proceedings (VRP) (Jan. 26, 27 (morning only) & Feb. 11, 2015) at 78. Once confronted, Johnson turned in the opposite direction and walked away, *id.* at 79, and he occasionally looked back as Ryan pursued him, *id.* at 104-05. In addition, although Johnson testified that he picked up the purse intending to return it to its rightful owner, *id.* at 154, the jury may have disbelieved him. *See Thomas*, 150

-23-

Wn.2d at 874 ("Credibility determinations are for the trier of fact."). And there was contradictory testimony about his reasons for entering Pottery Barn: Johnson testified that he was walking through Pottery Barn to make a return in the mall, VRP (Jan. 26, 27 (morning only) & Feb. 11, 2015) at 152, 180, but the reporting officer testified that Johnson said he was shopping at Pottery Barn, not just walking through, VRP (Jan. 27, 2015 (afternoon)) at 4.

We conclude that the State also presented sufficient evidence from which a reasonable jury could infer Johnson intended to steal Kendra's purse because he believed it contained a credit card. Although Johnson may not have looked inside the purse, VRP (Jan. 26, 27 (morning only) & Feb. 11, 2015) at 66, 87, 153, the purse was a designer purse, *id.* at 70, that likely belonged to an adult and therefore likely contained credit cards that Johnson expected the owner would use to pay for purchases. We acknowledge that a reasonable jury could find Johnson intended to steal only Kendra's purse and not her credit cards. But whether *a* reasonable jury could disagree with the inference that Johnson intended to steal a credit card when he stole the purse is not the standard for finding insufficient evidence. The standard is whether *no* reasonable jury could find beyond a reasonable doubt that Johnson intended to steal Kendra's credit cards when he stole her purse. *See Green*, 94 Wn.2d at 221. Johnson's challenge does not overcome that significant hurdle.

Because the evidence is sufficient to prove Johnson's specific intent to steal an access device, we affirm his conviction.

CONCLUSION

We hold that *Hickman* remains good law. There has been no showing that *Hickman* is incorrect and harmful or that its legal underpinnings have changed or disappeared. The Supreme Court's holding in *Musacchio* that jury instructions do not define the essential elements of a crime is limited to federal statutes and the federal "law of the case" doctrine. Washington has developed its own "law of the case" doctrine in common law and procedural rules such as CrR 6.15. Under this doctrine, to-convict instructions define the elements of a crime and the State must prove every element in the instructions beyond a reasonable doubt.[9]

Applying this framework here, the State was required to prove beyond a reasonable doubt that Johnson specifically intended to deprive Kendra of an access device because that element was included in the to-convict instruction, to which the State did not object. Because we find sufficient evidence of this element, we affirm the conviction.

---

[9] Given our resolution above, we need not decide the proper remedy in a case in which the State fails to prove any element in the to-convict instruction.

-25-

_Stephens, J._

WE CONCUR:

_Fairhurst, C.J._

_Johnson, J._

_Madsen, J._

_Wiggins, J._

_González, J._

_Gordon McCloud, J._

_Owens, J._

_Yu, J._